Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel XII

| | | |
|---|---|---|
| JOSÉ RAPHAEL JIMÉNEZ CARDONA<br>Recurrido<br><br>v.<br><br>EVIANGELYS DE JESUS CASTRO<br>Peticionaria | TA2025CE00695 | *Certiorari* procedente del Tribunal de Primera Instancia Sala de Fajardo<br><br>Caso Núm. RG2023RF00108<br><br>Sobre: Custodia |

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto, el Juez Campos Pérez y la Jueza Trigo Ferraiuoli

Adames Soto, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 10 de noviembre de 2025.

Comparece la Sra. Eviangelys De Jesús Castro (señora De Jesús o peticionaria), a través de un recurso de *Certiorari*, en el que solicita la revocación de una *Orden* expedida en su contra el 3 de octubre de 2025 por el Tribunal de Primera Instancia, Sala Superior de Fajardo, (TPI). Mediante dicho dictamen el foro recurrido declaró *No Ha Lugar* una *Moción Solicitando Inicio de Relaciones Maternofiliales* presentada por la peticionaria.

Juzgando que el foro recurrido abusó de su discreción al no acceder a la petición de restablecimiento de las relaciones maternofiliales solicitadas, la señora De Jesús Castro acude a nosotros solicitando como remedio que dispongamos para que ordenemos el inicio de las comunicaciones remotas con sus hijos.

No obstante, adelantamos que, examinada la totalidad del expediente, junto a los argumentos alzados por la peticionaria, decidimos *denegar* expedir el recurso solicitado, pues no apreciamos abuso de discreción en la determinación recurrida.

## I. Resumen del tracto procesal

El asunto ante nuestra atención inició propiamente con la presentación de una *Demanda* sobre custodia monoparental, instada por el Sr. José Raphael Jiménez Cardona, (señor Jiménez Cardona), contra la señora De Jesús, el 8 de septiembre de 2023. Según fue allí alegado, las partes mantuvieron una relación consensual, que tuvo como fruto el nacimiento de los menores K.J.J. y A.A.J. Eventualmente las partes se separaron y la peticionaria asumió la custodia de dichos menores. Sin embargo, en *la Demanda* aludida el señor Jiménez Cardona enumeró una serie de alegaciones en la que le imputó a la peticionaria: guiar en estado de embriaguez con los menores en el vehículo y haber tenido accidentes de tránsito en dicho estado; agredir físicamente a los menores; dejarlos solos en el hogar; permitir que un familiar les tocara sus partes íntimas, y otros les exhibieran sus genitales; referirse a estos con palabras soeces. Añadió que, por tales razones, se inició un proceso de *Petición de Orden de protección* bajo la Ley 57-2023, *Ley para la prevención del maltrato, preservación de la unidad familiar y para la seguridad, bienestar y protección de menores*, que tuvo como resultado se expidiera la referida Orden, *ex parte*, y se le entregara la custodia provisional de los menores al señor Jiménez Cardona. Sobre lo alegado fue informado, además, que existía una investigación iniciada en el Departamento de la Policía, en específico, por la Unidad de Delitos Sexuales. En definitiva, el señor Jiménez Cardona solicitó que se le concediera la custodia de los menores, y el asunto fuera referido a la Unidad Social para que emitiera el Informe Social correspondiente.

Luego de varias incidencias procesales, no necesarias detallar para propósitos del asunto ante nuestra consideración, la Unidad Social emitió el Informe requerido. La señora De Jesús decidió no impugnar dicho Informe, ni sus recomendaciones.

En consecuencia, el 16 de mayo de 2024, el TPI emitió una *Sentencia* entregándole la custodia de los menores al señor Jiménez Cardona, y autorizando la relocalización de estos junto a su padre en el estado de la Florida.

En lo que interesa al presente recurso de *certiorari*, en el mismo dictamen el tribunal *a quo* dispuso que: las relaciones maternofiliales entre la peticionaria y sus hijos permanecerían suspendidas hasta que el Departamento de la Familia (DF) determinara que esta hubiese concluido el proceso de validación de abuso sexual y entienda que la madre cuenta con las capacidades protectoras que garanticen el interés y el bienestar de los menores; que dichas relaciones maternofiliales serían revisadas una vez venciera la orden de protección de los menores; se ordenó a la señora De Jesús a continuar participando y beneficiándose de los servicios de salud mental, sicológicos, siquiátricos, consejeros y de farmacoterapia; que esta continuara participando y finalizara el Plan de Servicios establecido con el DF. Así, luego de que la peticionaria cumpliera con el Plan de Servicios a través de su asistencia a talleres del Programa para la Vida en Familia, el Departamento debía determinar si esta contaba con capacidades protectoras suficientes para poder iniciar las relaciones maternofiliales.

Pasado un tiempo, y luego de haber expirado la referida *Orden de protección*, la señora De Jesús radicó una *Moción Solicitando Inicio de Relaciones Maternofiliales*, el 9 de septiembre de 2025. Con el propósito de que se le concediera el inicio de las relaciones maternofiliales adujo en dicha moción: que el caso tramitado en el DF había sido oficialmente cerrado; *que completó las sesiones y servicios establecidos mediante referido* ***en el Concilio Integral de Loíza, Inc.***, y que, ***por haber dado estricto cumplimiento a las condiciones impuestas en la Sentencia***, se encuentra en posición para restablecer contactos con sus hijos. En específico, solicitó que el contacto con los menores se viabilizara mediante llamadas telefónicas, videollamadas u otros sistemas de comunicación

remota, con los horarios que el Tribunal juzgara prudentes, además de ponerse a la disposición para trasladarse a Florida para compartir con estos. Finalmente, peticionó que el Tribunal ordenara al DF que se expresara sobre lo dicho.[1] (Énfasis provisto).

Requerido por el Tribunal para que se expresara sobre la *Moción* que precede, el señor Jiménez Cardona presentó una *Moción en Cumplimiento de Orden* el 30 de septiembre de 2025, informando no oponerse a que se efectuaran las relaciones maternofiliales, <u>**condicionado a**</u>: **la verificación de los resultados sobre los servicios de salud mental, sicológicos, siquiátricos, consejeros y de farmacoterapia en sustancias**; **que la Unidad de Trabajo Social corroborara el cumplimiento con las condiciones establecidas en la Sentencia de 16 de mayo de 2024**. Sobre esto último expresamente advirtió en esta moción que "es nuestra postura que **los talleres ofrecidos sobre las capacidades protectoras no era únicamente las condiciones establecidas en la sentencia previamente mencionada, por lo que no será firmamos (*sic*)[2] en que se refiera el caso a la unidad de trabajo social para la corroboración de las demás condiciones**.[3] (Énfasis provisto).

A tenor, el 1 de octubre de 2025, el TPI ordenó al DF que informara si la peticionaria había concluido el proceso de validación de abuso sexual y entendía que esta contaba con las capacidades protectoras que garanticen el interés y el bienestar de los menores.

En cumplimiento, el 3 de octubre de 2025, el DF presentó una *Moción* en la cual incluyó una *Carta Informativa*, dando a conocer, en lo pertinente, que:

> Referente a la Sra. De Jesús, esta fue evaluada psicológicamente, el 6 de marzo de 2024. De la evaluación se desprendió que contaba con capacidades protectoras debilitadas. La misma fue referida a realizarse prueba de alcohol, **y el resultado fue negativo**. Fue referida a talleres del Programa para la Vida en Familia, **a los**

---

[1] Entrada 55 de SUMAC.
[2] Suponemos que se quiso decir "nos reafirmamos", a partir de lo que ya había dicho en la oración que precedía.
[3] Entrada 58 de SUMAC.

**cuales no asistió**. El 2 de abril de 2024, la misma realizó una carta donde daba por concluidos los servicios, **no aceptó cumplir con un plan de servicios**. Se mostró negativa, ya que había recibido la determinación del Tribunal de permitir que los menores se fueran con el Sr. Jiménez, padre biológico, además de que informó que se despedirá de sus hijos en el aeropuerto.

**Suscribiente intentó localizar a la Sra. Eviangelys De Jesús en varias ocasiones, cuando se logró la comunicación, la misma notificó que se mudó, que estuvo de viaje, y que no había continuado con los talleres**. Se le informó que **el caso se cerraría al no aceptar el plan de servicios**, y los menores no estar en nuestra jurisdicción.

En el mes de noviembre de 2024, se procedió con el cierre del caso. No obstante, en abril de 2025, se recibió de la Sra. De Jesús, certificación con fecha del 30 de abril de 2025, firmada por el Dr. Lexter Rosario Sanjurjo, PhD 2363, del Concilio de Salud Integrar de Loíza, que evidencia haber completado secciones de talleres sobre desarrollo de destrezas protectoras parentales.

Por causa del contenido de lo informado por el DF, el foro recurrido le concedió término a la peticionaria para que se expresara.

De conformidad, la señora De Jesús instó la moción requerida, reconociendo que, "**aunque lo informado por el DF reflejan aspectos que deben ser considerados por el Tribunal**, no constituye un impedimento para que se viabilice el inicio de la comunicación entre la madre y sus hijos".[4] (Énfasis provisto). Afirmó que, superado el proceso que supuso la tristeza provocada por la remoción de sus hijos, y *habiendo cumplido con las condiciones impuestas*, solicitaba se autorizara la comunicación remota con los menores, y, de ser necesario, estaba dispuesta a reanudar las terapias y cumplir con los referidos o someterse al trámite que el Tribunal estimara conveniente.

Es así como, el 3 de octubre de 2025, el TPI emitió la *Resolución* cuya revocación nos solicita la peticionaria, declarando *No Ha Lugar* la solicitud para iniciar las relaciones maternofiliales. En específico, el foro recurrido dispuso que "la Demandada tiene que cumplir con el Plan de Servicios ofrecido por el Departamento de la Familia, bajo los parámetros de la Ley 57.2023, según enmendada".[5]

---

[4] Entrada 63 de SUMAC.
[5] Entrada 64 de SUMAC.

Luego de que la peticionaria solicitara *Reconsideración,* y el TPI la denegara, acudió ante nosotros mediante recurso de *certiorari,* señalando la comisión del siguiente error:

> Erró el Tribunal de Primera Instancia al abusar de su discreción judicial al declarar no ha lugar la solicitud de inicio de comunicaciones maternofiliales entre la Sra. Eviangelys De Jesús Castro y sus hijos, sin contar con evidencia que demostrara riesgo o perjuicio alguno para los menores por permitir meras comunicaciones telefónicas o virtuales.

> El padre custodio no se opuso al restablecimiento del contacto, e incluso propuso un calendario tentativo para las llamadas.

> La Trabajadora Social del Departamento de la Familia tampoco expresó oposición ni recomendó mantener la incomunicación absoluta.

> La determinación recurrida carece de base fáctica y contradice la política pública de reunificación familiar y el principio del interés superior del menor.

Juzgamos innecesario solicitar la comparecencia de la parte recurrida, encontrándonos en posición de disponer del asunto sin mayor dilación.

## II. Exposición de Derecho

a.

El auto de *certiorari* permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. *Torres González v. Zaragoza Meléndez,* 211 DPR 821 (2023); *800 Ponce de León Corp. v. American International Insurance,* 205 DPR 163, 174 (2020); *Municipio Autónomo de Caguas v. JRO Construction,* 201 DPR 703, 710 (2019); *Medina Nazario v. McNeil Healthcare LLC.,* 194 DPR 723, 728 (2016). Es, en esencia, un recurso extraordinario mediante el cual se solicita al tribunal de superior jerarquía la corrección de un error cometido por el tribunal inferior. *García v. Padró,* 165 DPR 324, 334 (2005). La expedición del auto descansa en la sana discreción del tribunal, y encuentra su característica distintiva, precisamente, en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. *Municipio Autónomo de Caguas v. JRO Construction,* supra, pág. 711. El concepto discreción

implica la facultad de elegir entre diversas opciones. *IG Builders et al. v. BBVAPR,* 185 DPR 307, 338 (2012). Claro, la discreción judicial no es irrestricta y ha sido definida como una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. *Municipio Autónomo de Caguas v. JRO Construction,* supra*,* págs. 711-712; *Negrón v. Srio. de Justicia,* 154 DPR 79, 91 (2001).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52, establece que el recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, será expedido por el Tribunal de Apelaciones, en lo pertinente, cuando se recurre de casos de relaciones de familia.

Una vez identificada una causa para intervenir por este foro intermedio, a partir de las reconocidas en la referida Regla 52.1, entonces procede evaluar si a la luz de los criterios enumerados en la Regla 40 del Reglamento del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 42, pág. \_\_215 DPR\_\_ (2025), se justifica expedir el recurso solicitado. Con todo, se ha de considerar que ninguno de los criterios contenidos en la Regla 40 citada, es determinante por sí solo para el ejercicio de nuestra jurisdicción. *García v. Padró,* supra.

En este ejercicio, nuestro máximo foro ha expresado que un tribunal apelativo no intervendrá con las determinaciones interlocutorias discrecionales procesales de un tribunal sentenciador en ausencia de pasión, prejuicio, parcialidad o error manifiesto. *Argüello v. Argüello,* 155 DPR 62, 78-79 (2001). Cónsono con esto, el mismo alto foro ha advertido que nuestro ordenamiento jurídico desfavorece la revisión de las determinaciones interlocutorias. *Medina Nazario v. Mcneil Healthcare LLC,* supra, pág. 730.

Finalmente, conviene resaltar que la amplitud del recurso moderno de *certiorari* **no significa que sea equivalente a una apelación**, ***pues sigue siendo discrecional*** *y los tribunales debemos utilizarlo con cautela y*

*por razones de peso*. (Énfasis provisto). *Pueblo v. Díaz León*, 176 DPR 913, 918 (2009).

b.

La Ley Núm. 57-2023, *Ley para Prevención del Maltrato, Preservación de la Unidad Familiar y para la Seguridad, Bienestar y Protección de los Menores*, tiene como propósito, imponerle al Estado el *promover la reunificación familiar cuando las circunstancias particulares del caso lo permitan*. El mismo estatuto establece en su Artículo 2, que se debe brindar "servicios y herramientas necesarias a la familia para que puedan controlar y enfrentar los problemas que conducían hacia el maltrato". 8 L.P.R.A. § 1642. Además, dispone que las familias tienen múltiples deberes hacia los menores de edad, entre ellos "[a]bstenerse de realizar, facilitar o consentir que otros realicen todo acto y conducta que implique maltrato físico, sexual o psicológico, y asistir a los centros de orientación y tratamiento cuando sea requerido". *Id*. Esta Ley también dispone en su Artículo 44 lo siguiente:

> [...] (f) No se requerirán esfuerzos razonables de preservar a un menor con su padre, madre o persona responsable de este, o reunir a este con dichas personas luego de una remoción cuando el Departamento pruebe y el tribunal determine que existe una o más de las siguientes circunstancias:
> (1) Según la evidencia presentada en el caso, los esfuerzos para cambiar el comportamiento del padre, de la madre o persona responsable del menor no han sido exitosos luego de doce (12) meses de haberse iniciado la provisión de los servicios descritos en el plan de servicios, o al final de cualquier prórroga concedida por el tribunal.
> (13) Cuando a la luz de la totalidad de las circunstancias, el tribunal determine que la reunificación familiar no resultará en el mejor bienestar, salud, y seguridad para el menor. 8 L.P.R.A. § 1710.

## III. Aplicación del Derecho a los hechos

La solicitud de la peticionaria para revertir el dictamen recurrido parte de las siguientes premisas: que la denegatoria total del contacto de la madre con los menores no está sustentada en evidencia alguna de riesgo o perjuicio hacia los menores; que no hay oposición del custodio, ni del DF, a la petición; que la evidencia refleja el cumplimiento parcial de la madre con el plan de servicios y su disposición continua para completar talleres.

No tiene razón en ninguna de las premisas que propone.

Primero, no resulta necesario elaborar sobre la presunta *ausencia de evidencia sobre el riesgo que puede representar la madre a los menores*, habiendo sido dicho asunto adjudicado en la Sentencia de 16 de mayo de 2024. Es decir, el referido dictamen fue emitido precisamente basado en la prueba que tuvo ante su consideración el TPI para confirmar el riesgo a los menores que representaba la conducta de la peticionaria.

Entonces, y refiriéndonos a la actual petición para restablecer las relaciones maternofiliales, la peticionaria reitera que el padre-recurrido *no se opuso a ello*. Esto no es cierto, o se elige dejar afuera información importantísima sobre lo que sostuvo el recurrido cuando el TPI le ordenó expresarse al respecto. Según subrayamos en el recuento procesal, en su *Moción en cumplimiento de Orden* de 30 de septiembre de 2025, el recurrido fue cuidadoso al expresamente **condicionar** su posición sobre el retorno a las relaciones maternofiliales, a que el DF verificara e informara si la peticionaria **cumplió con todos los servicios** que le fueron requeridos en la Sentencia de 16 de mayo de 2024.

En torno a ello, y según se lo requirió el Tribunal, el DF compareció mediante escrito e informó, que dicha agencia había cerrado el caso de la peticionaria porque, precisamente, **no aceptó cumplir con el plan de servicios**. Es decir, que la peticionaria incumplió con las órdenes del Tribunal relacionadas a los servicios que habría de recibir, antes de que se autorizara el reinicio de las relaciones maternofiliales.

En lo referente al alegado *cumplimiento parcial* de la peticionaria con el plan de servicio del DF, el anterior párrafo basta para constatar lo contrario. Además, la presunta *disposición continua* de esta para cumplir con el plan de servicio no está sostenida en el expediente, pues, ofrecida oportunidad para ello, el DF plasmó que esta no asistió al *Programa para la Vida en Familia*, ni aceptó cumplir con el plan de servicios.

Lo cierto es que la evidencia que obra en el expediente muestra que a la peticionaria se le proveyó un *Plan de Servicios* con el propósito de

proveerle oportunidad de reiniciar las relaciones maternofiliales, pero esta lo desaprovechó. En este sentido, el Estado promovió y dispuso de medidas para cumplir el propósito de reunificación familiar, pero resultó inalcanzado por causas atribuibles a la peticionaria. Además, no surge del expediente que el DF convalidara o se expresara en favor de alguna sustitución de sus servicios, con los talleres sobre desarrollo de destrezas protectoras parentales tomados por la peticionaria *a posteriori*, sin atenerse a las órdenes contenidas en la Sentencia de 16 de mayo de 2024.

Dicho lo anterior, reconocemos que en *Sterzinger v. Ramírez*, 116 DPR 762, 777 (1985), nuestro Tribunal Supremo expresó que "el derecho del padre [o la madre] a la compañía del hijo, aunque sea esporádica, no es mera derivación del bienestar del niño, sino parte también de derechos fundamentales que nacen de la paternidad [o la maternidad], de nociones de libertad y justicia que una sociedad sujeta a limitaciones constitucionales no puede ignorar del todo". Sin embargo, el mismo alto Foro también añadió en esa Opinión que, "los tribunales deben realizar un análisis objetivo, sereno y cuidadoso de todas las circunstancias presentes en el caso antes su consideración, **con el único objetivo de garantizar el bienestar óptimo de los menores involucrados**". Id. (Énfasis provisto).

Interpretamos la denegatoria del TPI al restablecimiento de las relaciones maternofiliales en este momento, no como castigo porque la peticionaria incumpliera con las órdenes para recibir servicios, sino simplemente como el resultado de un foro al que se le dejó sin elementos para sopesar si la peticionaria estaba preparada para ello, en atención al interés de proteger los menores.

En definitiva, los datos del expediente judicial aquí resaltados no avalan la intervención de este foro intermedio con la *Resolución* cuya revocación nos solicita la peticionaria, en tanto está ausente el abuso de discreción que lo justificaría. No apreciamos asomo de prejuicio,

parcialidad, pasión o error manifiesto que justifiquen la revocación solicitada, sino al contrario.

**IV. Parte dispositiva**

Por los fundamentos anteriormente expuestos, *Denegamos* expedir el recurso de *certiorari* solicitado.

Se ordena a la Secretaría que se tenga este recurso, así como la Sentencia emitida, como **confidencial**.

Lo pronunció y manda el Tribunal y lo certifica su Secretaria.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones


**IV. Parte dispositiva**